UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

KARINA del CARMEN PENA on behalf of
D.S.,

                                    Plaintiff,

            - versus -

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

                                    Defendant.

---

**MEMORANDUM
AND ORDER**

15-CV-1229 (JG)

A P P E A R A N C E S :

> HAROLD SKOVRONSKY
> > 1810 Avenue N
> > Brooklyn, NY 11230
> > *Attorney for Plaintiff*

> KELLY T. CURRIE
> > Acting United States Attorney
> > Eastern District of New York
> > 271 Cadman Plaza East
> > Brooklyn, NY 11201
> By:  Dara A. Olds
> > *Attorney for Defendant*

JOHN GLEESON, United States District Judge:

            Plaintiff Karina del Carmen Pena ("Pena") brings this action pursuant to Section

405(g) of the Social Security Act (the "Act"), 42 U.S.C. § 405(g), on behalf of her minor son,

D.S., seeking review of the Social Security Administration's denial of his application for Social

Security Income ("SSI") under the standard applied for children.  The parties have cross-moved

for judgment on the pleadings.  Pena asserts that the decision by the Acting Commissioner of

Social Security (the "Commissioner") that found D.S. not disabled is not supported by

substantial evidence, and she seeks a remand for further proceedings.  The Commissioner

requests that I affirm her decision. I heard oral argument on September 1, 2015. For the reasons that follow, the Commissioner's motion is granted and Pena's motion is denied.

BACKGROUND

1. *Initial Application and Determination*

Pena applied for social security benefits for her son, D.S., on December 17, 2010, when he was two years old. R. 343-48.[1] D.S. was born on October 5, 2008. R. 343. Pena alleged that his disability, which resulted from his asthma, began on March 1, 2009. R. 356. The application was denied on January 10, 2011, based on a finding that D.S.'s condition "does not cause marked and severe functional limitations" and "does not interfere with his ability to perform most age appropriate activities." R. 127-32. Pena requested a hearing, and an initial hearing was held before Administrative Law Judge ("ALJ") Valorie Stefanelli on August 2, 2011. R. 69-84.

2. *The 2011 Hearing*

On August 2, 2011, D.S. appeared with Pena, who testified on his behalf. R. 69. D.S. was two-and-a-half years old at the time. R. 73. Pena testified that D.S. takes Plumico every morning, Singulair every night, and Supplinex when he goes to the park. R. 77. He also has periodic treatments with penicillin. R. 77. D.S. lives with Pena and his older brother, who was seven years old at the time. R. 77. They also live with Pena's brother, who watches D.S. during the day. R. 77-78. D.S. stayed home during the days at the time of the hearing, but he was going to start at Head Start in September. R. 78-79. Pena said she has to take D.S. to the emergency room about every two or three weeks because of his coughing. R. 79-80. She first testified that when D.S. is taking his medication, he is able to play outside and does not have problems. R. 80-81. Then, when her attorney questioned her, Pena clarified that D.S. got sick

---

[1]      Citations in the form "R. _" refer to the pages of the administrative record.

and had to go to the doctor even when he took his medication.  R. 81-82.  She repeated that he had to visit the doctor every two or three weeks.  R. 83.

3.    *The 2011 Decision*

The ALJ issued a written decision on August 11, 2011 (the "2011 Decision"), finding that D.S. was disabled since December 17, 2010, the date of his application.  R. 116-20.  Specifically, she found that the severity of D.S.'s asthma met the criteria in subsection 103.03 of the listings[2] because he experiences attacks "in spite of prescribed treatment requiring physician intervention, occurring at least once every 2 months or at least six times per year."  R. 119.  The ALJ wrote that the medical record "shows that the claimant experience[d] 10 acute episodic asthma attacks which required physician intervention during the period of April 2010 through March 2011, June 2011."  R. 119 (citing R. 419, 425-39).

4.    *The Appeals Council's Remand*

On September 26, 2011, the Appeals Council found that the ALJ's 2011 Decision was not supported by substantial evidence.  R. 121-24.  Specifically, the Appeals Council found that the medical records that the ALJ relied on do not include evidence supporting the statement in the 2011 Decision that D.S. experienced 10 acute asthmatic episodes requiring physician intervention between April 2010 and June 2011.  R. 122-23.  The Appeals Council reviewed the supporting evidence and found the notes from D.S.'s primary care physician, Dr. Henry Sardar, documented only one asthma attack, which was due to stopping medication, and one instance of exacerbation, and that the most recent treatment note (from June 2011) said that D.S.'s asthma was well-controlled.  R. 123.

The Appeals Council remanded the case back to the ALJ with instructions to: (1) obtain additional evidence concerning D.S.'s impairments "in order to complete the

---

2          *See* 20 C.F.R. pt. 404, Subpart P, Appendix 1.

administrative record in accordance with the regulatory standards regarding consultative examinations and existing medical evidence," give further consideration to the treating source opinion and explain the weight given to the opinion evidence, and request additional evidence from treating sources regarding D.S.'s limitations; (2) obtain evidence from a medical expert to clarify the severity of D.S.'s impairment; and (3) provide a rationale with references to the record in support of the new assessment of D.S.'s limitations.  R. 123.

     5.    *The 2013 Hearing*

     At the second hearing, held on February 12, 2013, Pena again testified on D.S.'s behalf.  R. 85.  Describing the Appeals Council's remand to Pena, the ALJ said that the case was "remanded back to me and they directed that a medical expert make the determination."  The ALJ said the medical expert was present and she would "consider [the expert's] testimony when making [her] decision."  R. 89.

     Medical expert Dr. Sreedevi Chandrasekhar testified that with respect to the six domains used to evaluate a child's limitations,[3] D.S. had no limitations in the first five categories, and less than a marked limitation in the sixth (health and physical well-being).  R. 93-94.  Chandrasekhar also mentioned that although Dr. Sardar reported that D.S. visited his office on a number of occasions, there were no treatment notes from those visits.  Chandrasekhar said that if she had those treatment notes, her opinion might change.  R. 94.

     D.S.'s mother testified that D.S. was four years old at the time of the second hearing and attending pre-kindergarten.  R. 91.  She said D.S. had emergency room visits since 2012 in addition to those previously submitted to the ALJ.  The ALJ asked D.S.'s attorney why he did not know about the records, and the attorney said he was not aware of them.  R. 95.  Pena

---

[3]    *See* 20 C.F.R. § 416.926a(b) (listing the domains, which are described in the next section of this opinion).

explained that there was a visit in December 2012, and that D.S. stayed for about six hours to receive doses of Prednisone. Pena also said that D.S. went again to the emergency room for his asthma the day before the hearing. This visit was documented in the medical records already before the ALJ. R. 96-97.

The medical expert said she needed the emergency room records from December 2012. She also said she needed more details regarding the visit from the day before. The ALJ said she would obtain the additional records, and she acknowledged Pena's attorney's efforts thus far in getting her the relevant information. R. 97-98.

Pena also testified that D.S. went to see an asthma specialist, Dr. Jennifer Collins, who said she wanted to start D.S. on allergy shots but could not because of D.S.'s speech delays; D.S. needed to be able to communicate with her. R. 100. The ALJ discussed the need to obtain records from Collins with D.S.'s attorney. R. 100-01. The ALJ said she would get the additional records, make them available to D.S. and the medical expert, and then make her determination. R. 102.

D.S.'s attorney examined Pena regarding D.S.'s attendance at school. Pena testified that D.S. misses about one or two days of school per week. Finally, regarding D.S.'s medications, Pena said D.S. uses Flovent once in the morning and once at nighttime, and he uses Singulair at nighttime. When he needs medication for his asthma, D.S. uses it every four hours, and then uses penicillin if the asthma gets worse. R. 103.

6.    *The 2013 Decision*

On September 11, 2013, the ALJ issued a second decision, this time finding that D.S. was not disabled (the "2013 Decision"). R. 35-48. In the 2013 Decision, the ALJ

concluded that although D.S. suffered from asthma that is "severe," it did not meet or equal the severity listed in Appendix 1 of 20 C.F.R. Part 404, Subpart P. R. 38-39.

First, the ALJ summarized the medical evidence in the record and found that although D.S. suffers from asthma, it appears stable while he is on medication and there is "no evidence in the record of any hospitalizations due to asthma and no evidence in the record of emergency room visits within the past year due to asthma." R. 40. The ALJ noted that with respect to D.S.'s emergency room visits in 2008 through October 2010, he was diagnosed with "acute upper respiratory infections" and an "unspecified viral infection," and not with having asthma attacks. *See* R. 40. Then, the ALJ noted 12 visits to the emergency room from January 2011 through February 2013. R. 40-43. The ALJ summarized the reasons for these visits as including "coughing and wheezing" (January 10, 2011); "coughing with asthma," "asthma with acute exacerbation and acute tonsillitis," and "persistent coughing," (August 5, 14, and 15, 2011);[4] an asthma attack (September 27, 2011); conjunctivitis and coughing (January 1, 2012); coughing (February 10, 2012); vomiting (June 18, 2012); "symptoms of asthma" and "asthma symptoms" (November 30 and December 2, 2012); and asthma with "acute exacerbation and allergic rhinitis" (February 11, 2013). R. 40-43. One visit, in March 2012, was not for respiratory complications. R. 42. The ALJ also noted in her summary where these hospital visits required medication or other treatment, mentioning that treatment with Albuterol (through a nebulizer) was required on August 5, 2011, August 15, 2011, February 10, 2012, and December 2, 2012. R. 41-43.

---

[4]     Although the ALJ mentioned in her decision that there was a hospital visit on August 5, 2011 (R. 41), I find no evidence of this hospital visit in the medical record or in the Commissioner's summary of the medical evidence. The exhibit that the ALJ cites regarding the August 5, 2011 visit appears to relate to the visit on August 15, 2011. *See* R. 454 (repeated at R. 445).

The ALJ also summarized the notes from treating physician and allergy specialist Dr. Jennifer Collins and Dr. Sardar, D.S.'s primary care physician. In January 2011, Collins performed an allergy evaluation for persistent asthma. In February 2011, Collins reported that D.S.'s examination was "within normal limits" and recorded an impressing of "improved allergic asthma." R. 40-41. In April 2011, Collins reported that D.S. had an asthma attack "due to stopping medication" after he stayed with his grandparents for the weekend. R. 41. In May and June 2011, Collins reported that D.S. appeared well and his asthma was controlled. R. 41. As summarized by the ALJ, there are no more treatment notes from Collins until August 2012, when Collins completed a medical report. Instead, there are only records of emergency room visits, as summarized above. In her August 2012 report, Collins reported diagnoses of asthma and eczema with recurrent coughing. She said that D.S. had two acute asthmatic episodes, occurring on February 14, 2012, and March 15, 2012, that required physician or hospital treatment, but that he had no limitations. R. 42, 462, 590-91.

An undated letter from Dr. Sardar listed office visits for an upper respiratory infection in March 2012 and visits for asthma in May, June, July, November, and December 2012. R. 43 (citing R. 489). However, there are no treatment notes substantiating Sardar's letter. Sardar also completed a medical report in August 2012. He said that D.S. has been under his care since October 2008. He diagnosed D.S. with chronic asthma, and said that D.S. had six or seven acute asthma episodes between July 2011 and July 2012 that required physician or hospital treatment. R. 42 (citing R. 476-84). There are no treatment notes supporting this report from Sardar. Finally, in November 2012, Collins recorded that D.S.'s asthma was uncontrolled. R. 42. Subsequent records related only to the emergency room visits discussed previously.

The ALJ summarized a report from D.S.'s teacher, Luz Torres, completed in January 2013. The report showed an "unusual degree of absenteeism due to asthma," D.S. uses a nebulizer/inhaler on a regular basis, is drowsy after taking medication, and has difficulty expressing himself. She also reports that he is a happy child who follows directions. R. 43.

The ALJ also summarized evidence and testimony from Dr. Chandrasekhar, who testified that based on his review of the evidence, D.S.'s impairment does not meet or equal the severity required by the regulations. R. 43. Chandrasekhar noted that her opinion may change if she were able to review treatment notes from Dr. Sardar. R. 43. Chandrasekhar also completed a medical interrogatory form for children, on which she noted that D.S. has allergies to mold, roaches, mice, eggs, and salami that cause allergic rhinitis, asthma, and eczema. She noted that the record indicates doctor and hospital visits but "none show[] evidence of asthma exacerbations." R. 43.

Considering the evidence above, the ALJ found that D.S.'s impairment could reasonably be expected to produce his alleged symptoms, but she found that the statements about the intensity, persistence, and limiting effects of these symptoms were not wholly credible. R. 43. In making this finding, the ALJ gave controlling weight to Dr. Chandrasekhar's opinion and great weight to Torres's questionnaire. R. 43-44.

The ALJ also considered each of the six domains in 20 C.F.R. § 416.926a to evaluate D.S.'s limitations. In the first domain, acquiring and using information, the ALJ found that Torres's report showed only a slight problem in D.S.'s ability to understand, participate in class discussion, and provide organized examples and descriptions. Based on this, the ALJ concluded D.S. has no limitation in this domain. In the second, attending and completing tasks, the ALJ said that because Torres reported that D.S. has only slight problems with completing

work without careless mistakes, D.S. has no limitation in this domain.  In the third, interacting and relating with others, Torres said D.S. has an "obvious problem introducing and maintaining relevant and appropriate topics of [conversation] and using adequate vocabulary and grammar" to express his ideas, and in all other areas he has no problems.  Based on this, the ALJ concluded D.S. has no limitation in this domain.  In the fourth, moving about and manipulating objects, the ALJ concluded that D.S. suffers from no limitations, again based on Torres's report.  In the fifth, caring for oneself, the ALJ also concluded that D.S. has no limitations based on Torres's report.  Finally, in the sixth domain, health and physical well-being, the ALJ found that D.S. has a "less than marked limitation in health and physical well-being" because of Torres's report that he frequently misses school due to asthma.  R. 44-48.

Based on her conclusions regarding the six domains described above, the ALJ found that D.S.'s impairment does not result in limited functioning so as to make his impairment functionally equal to one of the impairments listed in the regulations.  Accordingly, she concluded that he is not disabled.

7.  *New Evidence Submitted to the Appeals Council*

On May 27, 2014, D.S.'s counsel wrote to the appeals council, submitting new evidence for its review.  The evidence consisted of a letter from Dr. Sardar dated December 12, 2013, and records from Sardar from February through May 2014.  R. 8-23.  Sardar's letter says that D.S. suffers from "chronic moderating persistent asthma" and that he takes medication via a nebulizer machine.  It also lists D.S.'s other medications, Prednisone, Flovent (through an inhaler), and Singulair.  Finally, the letter says that when D.S.'s asthma is active, he may need to stay home from school from three to five days.  R. 9.

The new medical evidence from Sardar consisted of office visits for asthma in February and March 2014, a hospital visit for asthma in April 2014, an office visit for a cough in April 2014, an office visit for an upper respiratory infection in May 2014, two visits to the emergency room in May 2014, and a follow-up visit with Sardar in May 2014. R. 8-23.

8.      *Second Appeals Council Review*

On January 9, 2015, the Appeals Council denied D.S.'s request to review the 2013 Decision, at which time it became the final decision of the Commissioner. R. 1-4. Concerning the new evidence from Dr. Sardar, the Appeals Council said the evidence is "new information" about a "later time" and does not affect the decision about whether D.S. was disabled on or before September 11, 2013. R. 2.

## DISCUSSION

Pena argues that the Commissioner's decision is not supported by substantial evidence. Pena says that the ALJ should have found that D.S.'s asthma was medically equal or equivalent in severity to a listed impairment. Pena also argues that the Appeals Council should have considered the new evidence she submitted after the 2013 Decision. The Commissioner argues that the decision finding D.S. not disabled should be upheld.

A.      *The Legal Standards*

Under 42 U.S.C. § 405(g), I review the Commissioner's decision to determine whether the correct legal standards were applied, and whether the decision is supported by substantial evidence. *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987). The first inquiry requires a court to determine whether "the claimant has had a full hearing under the [Commissioner's] regulations and in accordance with the beneficent purposes of the Act." *Echevarria v. Sec'y of Health & Human Servs.*, 685 F.2d 751, 755 (2d Cir. 1982) (quotation

marks and citation omitted).  The second inquiry is whether the Commissioner's decision is supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Halloran v. Barnhart*, 362 F.3d 28, 31 (2d Cir. 2004) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *see also id.* ("Substantial evidence is more than a mere scintilla.") (internal quotations omitted).  The hearing on disability benefits is a nonadversarial proceeding, and the ALJ "has an affirmative obligation to develop the administrative record." *Melville v. Apfel*, 198 F.3d 45, 51 (2d Cir. 1999).

A district court has the "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."  42 U.S.C. § 405(g).  A remand for further proceedings is appropriate when "the Commissioner has failed to provide a full and fair hearing, to make explicit findings, or to have correctly applied the . . . regulations," *Manago v. Barnhart*, 321 F. Supp. 2d 559, 568 (E.D.N.Y. 2004) (citations omitted), or "[w]here there are gaps in the administrative record."  *Rosa v. Callahan*, 168 F.3d 72, 82-83 (2d Cir. 1999) (quoting *Pratts v. Chater*, 94 F.3d 34, 39 (2d Cir. 1996)).  Alternatively, where the record establishes "persuasive proof of disability and remand for further evidentiary proceedings would serve no purpose," the court should remand solely for the calculation and payment of benefits. *Parker v. Harris,* 626 F.2d 225, 235 (2d Cir. 1980) (citation omitted).

A child is disabled under the Act when he is not working and "has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 1382c(a)(3)(C).  The corresponding regulations prescribe a three-step process for evaluating whether a child is

disabled under this definition: he must show he (1) was not working; (2) had a "severe" impairment or combination of impairments; and (3) his impairment or combination of impairments meets or equals one or more of those listed in Appendix 1, Subpart P to 20 C.F.R. Pt. 404 (the "Listed Impairments"). *See* 20 C.F.R. § 416.924.

Asthma meets the severity in the Listed Impairments when a child has attacks "in spite of prescribed treatment and requiring physician intervention, occurring at least once every 2 months or at least six times a year. Each inpatient hospitalization for longer than 24 hours for control of asthma counts as two attacks, and an evaluation period of at least 12 consecutive months must be used to determine the frequency of attacks." § 103.03(B) of 20 C.F.R. Pt. 404, Subpt. P, App'x 1.

To decide if a child's impairment equals the severity of the Listed Impairments, a child's functional limitations are evaluated in terms of six "domains." Those are: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for oneself; and, (6) health and physical well-being. 20 C.F.R. § 416.926a(b)(1). For an impairment or a combination of impairments to equal a Listed Impairment, it must result in "marked" limitations in two of the domains or "extreme" limitations in one domain. 20 C.F.R. § 416.926a(a). A "marked" limitation interferes "seriously" with a child's functioning, and an "extreme" limitation interferes "very seriously." 20 C.F.R. § 416.926a(e)(2)-(3).

B.      *The Medical Equivalence Determination*

As explained above, for D.S.'s asthma to meet the severity required under the Listed Impairments, he must "suffer at least six asthma attacks within a twelve month period, 'in spite of prescribed treatment and requiring physician intervention.'" *Lowry v. Astrue*, 474 F.

App'x 801, 803 (2d Cir. 2012) (quoting 20 C.F.R. Pt. 404, Subpt. P, App'x 1 § 103.03(B)).

Asthma attacks are defined as "prolonged symptomatic episodes lasting one or more days and

requiring intensive treatment, such as intravenous bronchodilator or antibiotic administration or

prolonged inhalational bronchodilator therapy in a hospital, emergency room or equivalent

setting." *Id.* (quoting 20 C.F.R. Pt. 404, Subpt. P, App'x 1 § 3.00(C)) (internal quotation marks

omitted). As mentioned above, an inpatient hospitalization lasting more than 24 hours qualifies

as two attacks. *See* 20 C.F.R. Pt. 404, Subpt. P, App'x 1 § 103.03(B).

  Pena does not identify the specific medical evidence needed to support a finding

that D.S.'s asthma meets the requirements of a listed impairment, and I can find none. Indeed,

the ALJ and the medical expert found that D.S. did not have the requisite number of asthma

attacks or hospital visits to meet those requirements. *See* R. 39, 43. As the Commissioner points

out, the record shows that only three asthma attacks required emergency intervention sufficient

to qualify as an "attack" under the Listed Impairments, because only those hospital visits (on

August 15, 2011, February 10, 2012, and December 2, 2012) required that D.S. be treated with

nebulized medication, such as Albuterol. *See* Def. Br. at 19-20. The Commissioner further

points out that the two "acute asthmatic episodes" mentioned by Dr. Collins in her August 2012

report and cited in the ALJ's decision, *see* R. 42, did not require medical intervention sufficient

to qualify as attacks under the regulations. *See* Def. Br. at 20 (citing R. 590-91).

  Instead, Pena argues that after the Appeals Council remanded the case, new

treatment records and an updated questionnaire from Dr. Sardar show that D.S.'s asthma meets

the severity in the Listed Impairments. Pl. Br. at 5. Even though Pena points to a questionnaire

completed by Dr. Sardar where he says D.S. experienced ten asthmatic episodes in the past year,

there is not sufficient evidence in the record to conclude that those episodes qualified as "asthma

attacks" within the meaning of a listed impairment, despite the ALJ's clear efforts to develop the record.  *See* R. 421.  Indeed, the ALJ incorporated the treatment records Pena identifies as well as records obtained after the second hearing into her 2013 Decision.  *See, e.g.*, R. 42 (citing R. 476-84, 490-552).[5]

Accordingly, there was substantial evidence in the record that caused the ALJ to adopt the medical expert's opinion and find that D.S.'s asthma did not satisfy the requirements for a listed impairment.  *See Negron ex rel. M.C.N. v. Comm'r of Soc. Sec.*, No. 1-CV-8685 (KBF), 2013 WL 2896845, at *6 (S.D.N.Y. June 12, 2013) ("The opinions of non-treating sources such as consulting physicians can constitute substantial evidence and even override the opinions of treating physicians if they are supported by the record.") (citing cases).

C.     *Functional Equivalence Determination*

Next, Pena argues that D.S. should still be considered disabled because his asthma functionally equals the severity of asthma in the Listed Impairments.  Specifically, Pena argues that the ALJ's conclusion that D.S. does not have a marked limitation in domain six (health and well-being) is not supported by substantial evidence.   Pena argues that D.S.'s limitation in domain six is extreme.  Pl. Br. at 6.

As explained above, if D.S.'s asthma does not constitute a listed impairment, it can be the functional equivalent if it results "in 'marked' limitations in two domains of functioning or an 'extreme' limitation in one domain."  *Lowry*, 474 F. App'x at 805 (quoting 20 C.F.R. § 416.926a(b)(1)) (listing six domains of function).  The ALJ's decision in this respect relied on Torres's report, where she said that D.S. uses a nebulizer/inhaler and becomes drowsy afterward and frequently misses school due to asthma.  R. 396.  The ALJ also relied on the

_____

[5]       Pena does not argue that the ALJ failed to develop the record, *see Rosa*, 168 F.3d at 79, as the ALJ clearly made efforts to obtain available medical records, and she incorporated them into her decision.

medical expert's opinion, who said D.S. has a "less than marked" limitation in this domain, and commented only that he has allergic rhinitis, asthma, and eczema. R. 94, 618. The ALJ also properly noted the opinions of Dr. Collins and Dr. Sardar that D.S. has no physical limitations. *See* R. 42, 463, 480.

To make a finding about functional equivalence, the ALJ was required to consider factors including how D.S. functions in school and the effects of his medications and other treatment. 20 C.F.R. § 416.926a(a)(1)-(3). The "health and well-being" domain differs from the other domains in that a claimant is considered to have a marked limitation if he is "'frequently ill because of [his] impairment(s) or [has] frequent exacerbations of . . . impairment(s) that result in significant, documented symptoms or signs.'" *Hairston ex rel. S.N. v. Comm'r of Soc. Sec.*, 52 F. Supp. 3d 657, 674 (S.D.N.Y. 2014) (quoting 20 C.F.R. § 416.926a(e)(2)(iv) (internal quotation marks omitted)). The term "frequent" includes circumstances in which the claimant has "episodes of illnesses or exacerbations that occur on an average of [three] times a year, or once every [four] months, each lasting [two] weeks or more" or "episodes that occur more often than [three] times in a year or once every [four] months [that] do not last for [two] weeks . . . ." *Hairston*, 52 F. Supp. 3d at 674 (quoting 20 C.F.R. § 416.926a(e)(2)(iv) (internal quotation marks omitted)). In *Hairston*, the court remanded a case back to the ALJ when it determined that the ALJ did not sufficiently take into account testimony from a minor claimant's parents regarding the effect of her migraines on her attendance at school. The district court pointed to evidence in the record suggesting that the claimant's migraines were "frequent and debilitating," including evidence from the testifying medical expert who noted that the migraines caused the claimant problems with going to school. *See Hairston*, 52 F. Supp. 3d at 675.

Although it is possible D.S. has a marked limitation due to his frequent absences in school, such a finding would not require a determination of functional equivalence, as D.S. would need to have a "marked" limitation in two or more domains for his asthma to be equal to that in the Listed Impairments. *See* 20 C.F.R. § 416.926a(a). Moreover, his limitation in this regard may not properly be characterized as extreme. For a limitation in domain six to be considered extreme, the regulations require symptoms or signs "substantially in excess of the requirements for showing a 'marked' limitation" and also that a claimant's impairment "should meet or medically equal the requirements of a listing in most cases." 20 C.F.R. § 416.926a(e)(3)(iv). Additionally, although the ALJ could have made more precise factfinding about the extent of D.S.'s absences from school, the ultimate finding was supported by substantial evidence from the medical expert and the teacher's report. *See Abukhader ex rel. I.K.A. v. Comm'r of Soc. Sec*., No. 11-CV-9453 (KBF), 2013 WL 5882858, at *6-7 (S.D.N.Y. Oct. 28, 2013) (reaching a similar conclusion with respect to the ALJ's findings in this domain).

D.    *The New Evidence Submitted to the Appeals Council*

Finally, Pena contends that the Appeals Council should have considered the new evidence submitted by Dr. Sardar. *See* R. 8-23. As explained above, the evidence consists of a letter and records of office and hospital visits from December 2013 to May 2014. *Id.* The Appeals Council did not review the new evidence because it found that the evidence did not relate to whether D.S. was disabled on or before September 11, 2013. R. 2.

The Appeals Council must consider "new and material" evidence "where it relates to the period on or before the date of the administrative law judge hearing decision." 20 C.F.R. § 404.970(b). Evidence is "new" if it was not considered by the ALJ and is "not merely cumulative of what is already in the record," and it is "material" if it "is both relevant to the

claimant's condition during the time period for which benefits were denied and probative." *Jones v. Sullivan*, 949 F.2d 57, 60 (2d Cir. 1991) (internal quotation marks omitted). Materiality also requires "a reasonable possibility that the new evidence would have influenced the [Commissioner] to decide the claimant's application differently." *Id*. Additionally, the evidence "need not have been generated prior to the ALJ's decision to be material." *See Marchetti v. Colvin*, No. 13-CV-02581 (KAM), 2014 WL 7359158, at *14 (E.D.N.Y. Dec. 24, 2014) (finding Appeals Council should have considered new evidence) (citing *Newbury v. Astrue*, 321 F. App'x 16, 19 (2d Cir. 2009)). Instead, evidence of the severity of a claimant's condition may support an inference that the claimant's condition was more serious than previously thought during the relevant period. *See Marchetti*, 2014 WL 7359158, at *14 (citing *Pollard v. Halter*, 377 F.3d 183, 193 (2d Cir. 2004)). New evidence submitted to the Appeals Council following the ALJ's decision becomes part of the administrative record and is subject to judicial review. *See Perez v. Chater*, 77 F.3d 41, 45 (2d Cir. 1996).

I agree with the Appeals Council that the treatment notes submitted by Dr. Sardar do not relate to the time period in question, *i.e.*, whether D.S. was disabled on or before September 11, 2013. Although the letter from Dr. Sardar may relate to D.S.'s condition before the date of the administrative hearing, there was already evidence in the record containing the information noted in the letter. Therefore, the Appeals Council was correct not to consider it.

## CONCLUSION

For the reasons explained above, the Commissioner's motion for judgment on the pleadings is granted and Pena's motion is denied. The Clerk is directed to close the case.

So ordered.


John Gleeson, U.S.D.J.

Dated: September 8, 2015
       Brooklyn, New York